**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| **JAMES KNIGHT AND JASON MAYES,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) **Case No.**_____ |
| | ) |
| **THE METROPOLITAN GOVERNMENT** | ) |
| **OF NASHVILLE AND DAVIDSON** | ) |
| **COUNTY,** | ) |
| | ) |
| **Defendant.** | ) |

---

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

---

### I. Introduction

This case is a civil rights challenge to the Metropolitan Government of Nashville and Davidson County's (Metro) sidewalk law found at Metro Code § 17.20.120 *et. seq*. Through this unconstitutional law, Metro coerces private property owners into spending thousands of dollars and dedicating uncompensated rights-of-way and/or easements to the city to build and renovate public sidewalks, curbs, and gutters that belong to Metro. Metro began conditioning home building permits on the property owner's funding of sidewalks when it replaced the prior version of Metro Code § 17.20.120 with BL2016-493, effective July 1, 2017.

1

Since then, Nashvillians have noticed what Metro Councilmember Mary Carolyn Roberts called "the unintended consequences."[1] Sidewalks that connect to nothing (sidewalks to nowhere)[2] and zigzagging sidewalks[3] began to appear across the city. Depictions are below:

zigzagging sidewalks



(reported in the *Ferrier Files*, *infra* n.3)

---

[1] Rebecca Cardenas, *City ordinance responsible for sidewalks to nowhere*, News4 Nashville (Mar. 4, 2019), https://www.wsmv.com/news/city-ordinance-responsible-for-sidewalks-to-nowhere/article_0083 5c22-3eed-11e9-a2a6-5fb78cc666c4.html.

[2] *Id.*

[3] Dennis Ferrier, *Ferrier Files: Zigzagging sidewalks more common with conflicting Metro construction*, Fox17 WZTV Nashville (Aug. 1, 2019), https://fox17.com/news/ferrier-files/ferrier-files-zigzagging-sidewalks-more-common-with-confl icting-metro-construction.

2

<u>Sidewalks to nowhere</u>

 

(reported in the Ferrier Files, *supra* n.3)

The United States Constitution prohibits Metro from holding building permits for ransom just because Metro cannot pay for city sidewalks itself. Metro's sidewalk law, amended into its present form in 2019 (BL2019-1659), is a funding scheme whereby Metro relies on its legitimate authority to regulate land use as a means to illegitimately force private citizens to pay to address unrelated public problems. It is the sort of "out and out . . . extortion" that the Supreme Court has struck down before as violating the Fifth Amendment's Takings Clause by burdening the right not to have property taken without just compensation. *See Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 837 (1987).

The two plaintiffs in this case are among the many Nashvillians injured by Metro's sidewalk law. By merely constructing new homes, Plaintiffs caused no direct harm that would be mitigated by forcing them to pay for city sidewalks. As a result of the sidewalk law, James Knight cannot obtain the permit he needs to build a new home at 411 Acklen Park Drive. And Jason Mayes was forced to pay Metro $8,883.21 so he could obtain a building permit for his family home at 167 McCall Street.

3

## II. Jurisdiction and Venue

1.     Plaintiffs bring this civil rights lawsuit under the Fifth and Fourteenth Amendments to the United States Constitution; the Civil Rights Act of 1871; 42 U.S.C. § 1983; the Declaratory Judgment Act, 28 U.S.C. § 2201; and 28 U.S.C. § 1367.

2.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367 because the matter in controversy arises under the Constitution of the United States.

3.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (2) because Defendant resides in this District and because the acts and events giving rise to the Complaint occurred or will occur in this District.

4.     This Court has authority to enter a declaratory judgment and to provide preliminary and permanent injunctive relief under Rules 57 and 65 of the Federal Rules of Civil Procedure, and 28 U.S.C. §§ 2201, 2202.

## III. Parties

5.     Plaintiffs are both property owners in Nashville who sought Metro-issued residential building permits and thus fell under the scope of the sidewalk law.

6.     Mr. James Knight (Jim) is the owner of 411 Acklen Park Drive, Nashville, Tennessee, 37205. He plans to build a single-family home on the property. Before he can do so, he needs a building permit from Metro. Metro refuses to issue a building permit unless Jim agrees to one of two conditions: construct city-approved sidewalks on his property or pay Metro a fee so that the city can build sidewalks somewhere else. Jim has not agreed to these permit conditions. Thus, Metro will not give him a permit to start construction.

7.     Mr. Jason Mayes is the owner of 167 McCall Street, Nashville, Tennessee, 37211. When Jason sought to build a home in which to raise his family close to his parents who live on

the same block, he needed a building permit from Metro. Metro required Jason to comply with the sidewalk law as a condition to receiving his permit. Jason paid Metro a fee in-lieu of building a sidewalk. Metro then issued a building permit. Jason is in the process of building his home.

8.    Plaintiffs both unsuccessfully challenged the condition that they comply with Metro's sidewalk law to Metro's Board of Zoning Appeals (BZA).

9.    Metro is a political subdivision of the State of Tennessee and a public corporation, capable of suing and being sued. Metro. Charter § 1.01. At all times relevant, Metro is a person within the meaning of 42 U.S.C. § 1983. At all times relevant, Metro acted and acts under color of law.

### IV.  Statement of Facts

### Metro's Sidewalk Law

10.    Metro's present version of the sidewalk law was enacted by BL2019-1659 (attached as Exhibit 1), and is now codified at Metro. Code § 17.20.120 *et. seq.*

11.    BL2019-1659 became effective on September 1, 2019 and will hereafter be referred to as the "sidewalk law."

12.    When the sidewalk law applies, a property owner in specified areas of the city must agree to construct city sidewalks as a condition of a residential building permit.

13.    When specified, the sidewalk law allows the property owner to "contribute" to Metro's pedestrian benefit fund as an alternative "in-lieu" of constructing sidewalks (the in-lieu fee).

14.    Metro requires that all sidewalks be constructed according to standards approved by the Department of Public Works (Public Works).

15.    Metro posts its approved standards on its Public Works webpage.[4]

---

[4] https://www.nashville.gov/Public-Works/Developers/Details-and-Specifications.aspx.

16.     The sidewalk law also mandates that the property owner dedicate a right-of-way and/or public pedestrian easements to permit present or future installation of a public sidewalk built to the current standards of the metropolitan government, regardless of whether the property owner builds or pays.

17.     Pursuant to the sidewalk law, every year on July 1, Public Works sets the in-lieu fee based on the average cost of all new and repair sidewalk projects contracted for or constructed by the metropolitan government.

18.     Upon information and belief, as of the date of this filing, the in-lieu fee is $152 per linear foot.

19.     Any payment is assigned and designated for Metro's strategic plan for sidewalks and bikeways.

20.     Any payment shall be allocated within the same pedestrian benefit zone as the property to be developed.

21.     If Metro does not allocate the payment within ten (10) years of receipt, then it shall be refunded to the property owner.

22.     The fee in-lieu of construction cannot exceed three percent (3%) of the total construction value of the permit.

23.     In specified instances, the Zoning Administrator is authorized to waive, in whole or in part, the sidewalk construction requirement, authorize an alternative design, or authorize payment of an in-lieu fee.

24.     After the Zoning Administrator has made a determination, a property owner may appeal and seek a variance from the sidewalk law from the BZA.

25.     Metro has continuously enforced the sidewalk law since its effective date.

6

26.     As of this filing, Jim is an 80-year-old man who owns a lot at 411 Acklen Park Drive, Nashville, Tennessee, 37205.

27.     Jim purchased the lot in 2017.

28.     The property at 411 Acklen Park Drive is zoned for medium density residential.

29.     Metro's property record card appraises the lot at a total value of $200,000.

30.     Metro's property record card assesses the lot's value at $50,000.

31.     Jim intends to build a single-family home on the property.

32.     Metro has a publicly available database for sidewalk requirements at:

<https://maps.nashville.gov/SidewalkRequirements/>.

33.     According to Metro's sidewalks requirement database, Metro will only issue a building permit for 411 Acklen Park Drive after the property owner agrees to build a new sidewalk.

34.     The lot at 411 Acklen Park Drive does not border any lots with connecting sidewalks.

35.     Jim took the following photographs of the property and neighboring property on or about July 16, 2020.

7



36.     As shown in the first picture, the lot does not have existing sidewalks.

37.     As shown in the second picture, the lot does not connect to lots with sidewalks.

38.     No sidewalks exist on that side of the street on the block face.

39.      On or about March 3, 2018, Jim's project manager, Erick Stevenhagen, began the process of gaining approval from Metro to obtain the necessary permits to build a new single-family home at 411 Acklen Park Drive.

40.     Public Works and the Stormwater Department (collectively, Public Works) advised Erick that constructing a sidewalk on the property would create water runoff issues that would cause water pooling and flooding on neighboring properties.

41.     Erick understood from Public Works that he should not build a sidewalk on 411 Acklen Park Drive.

42.     After Erick met with Public Works, Metro still refused to issue Jim a building permit until he complied with the sidewalk law.

43.     On or about October 23, 2019, Jim filed a Codes Waiver Zoning Request.

44.     He requested a waiver from complying with the sidewalk law from Zoning Administrator Jon Michael.

45.     In response to Jim's request for a waiver, Metro Planning Commission (Metro Planning) issued a recommendation to deny Jim's request on January 7, 2020.

46.     On or about January 15, 2020, Zoning Administrator Jon Michael formally denied Jim's request, saying: "Disapprove as requested. The applicant shall construct sidewalks per the Local Street standard."

47.     Jim submitted an appeal to the BZA on February 4, 2020.

48.     He cited as his grounds that Public Works advised that building sidewalks on the property would create stormwater runoff issues, result in standing and pooling water, and flood neighboring properties.

49.     He cited as his grounds that forcing him to provide or pay for sidewalks was unconstitutional.

50.     On May 21, 2020, Jim appeared in front of the BZA through his counsel, Grover Collins.

51.     A recording of the May 21, 2020 BZA meeting is available at: <https://youtu.be/GOk6Qg2FNV8 >. Plaintiff Jim Knight's case begins at 41:30.

52.     As grounds for his appeal, Jim explained to the BZA that Public Works determined that building sidewalks at 411 Acklen Park Drive would create drainage issues in the

neighborhood, and that he had not created the need for sidewalks, or increased density or foot traffic.

53.     As grounds for his appeal, Jim explained to the BZA that requiring him to provide sidewalks or pay for sidewalks would result in an unconstitutional taking.

54.     On or about May 21, 2020, the BZA denied Jim's request to remove the sidewalk condition altogether.

55.     The BZA granted a variance subject to the condition that: "[T]he appellant shall build an alternative sidewalk design in conjunction with storm water and public works approval or contribute in-lieu of construction."

56.     On or about May 22, 2020, the BZA issued an order to this effect.

57.     Since the issuance of the order, Jim sought the cost of the in-lieu fee.

58.     In response to an email from Jim, on August 27, 2020, Zoning Administrator Jon Michael emailed:

> 1. Public Works actually calculates what you owe based on their confirmation of the linear frontage, the applicability of the 3% cap, etc. So work with them on the number.
> 2. Whatever the required sidewalk fund payment is, yes. Once that's paid (usually in conjunction with payment for the building permit) the permit is released.
> 3. No you may not wait until construction is completed to pay the fee.
>
> Contact Public Works. You won't need Zoning anymore at this point.

59.     On or about August 28, 2020, Jim emailed Benjamin York at Public Works:

> Dear Mr. York,
>
> If I pay the Sidewalk Fee of $7600, and other required fees, will I get a building permit for 411 Acklen Park Drive?
>
> Thank you for your help on this issue.

10

James L. Knight

60.    On August 30, 2020, Benjamin York responded:

Mr. Knight,

The current fee in-lieu is $152/l.f. and with your 50', the $7600 is the fee in-lieu. However, the Code permits a 3% cap. The cap would have to be calculated off the building permit cost. So, while the $7600 is the fee, it would be reduced to 3% cap.

If you wish to pay the in-lieu, please let me know and I can update the permit in CityWorks. Cityworks will calculate the exact fee with the 3% cap.

Thanks
 Ben

61.    On or about August 30, 2020, Jim responded:

Ben,

Many thanks for your prompt, precise response. Having concrete costs for budgeting residential construction is vital, especially when an easement is also required to obtain the building permit.

Unless you advise otherwise, I will assume that a building permit will be awarded after granting the easement and paying the in-lieu-of Sidewalk fee of $7600.

Appreciatively, Jim Knight

62.    On or about September 3, 2020, Jim emailed Benjamin York:

Ben,

Many thanks for your offer to "update the permit in CityWorks. City works will calculate the exact fee with the 3% cap."

Please send me that exact fee as soon as possible. If that fee cannot be calculated quickly, please let me know. It is expensive to hold property while waiting for critical information.
Thank you.

James l Knight

63.    On or about September 4, 2020, Benjamin York responded:

Codes actually uses the CW program to determine the exact fee, but the permit has been locked awaiting the BZA decision.

It appears that your permit valuation is $330,207.36. 3% of that is $9906.22, so the 3% cap will not apply. I believe the fee in-lieu for this property would be the $7600.

Jon, Can you confirm my math above?

Thanks
Ben

64.    On or about September 4, 2020, Jon Michael responded:

Ben:

The lower number applies.  But BZA appeals do not block issuance of building permits.

JM.

65.    Metro refuses to grant Jim the necessary permit to construct his home unless he pays Metro an estimated amount of $7,600 or agrees to construct an alternative designed sidewalk.

66.    Jim's planned new home will not have any impact on any existing sidewalk on the lot because there are no sidewalks.

67.    If Jim built a sidewalk then it would not connect to any sidewalks, that is, it would be a sidewalk to nowhere.

68.    Jim's planned new home will not have any impact on any existing curbs or gutters on any street fronting the property.

69.    Jim's planned new home does not change the use of the property. Even though it is zoned for medium density residential, Jim will build only one, single-family home.

70.     If 411 Acklen Park Drive was suffering from some deficiency, that deficiency preexisted Jim's planned home construction and had nothing to do with Jim's planned home construction.

71.     Metro's demand that Jim pay to construct sidewalks, curbs, and gutters has nothing to do with any impact on the surrounding neighborhood caused by Jim's construction of a new home.

72.     The sidewalk law requires that Jim pay to construct city sidewalks, curbs, and gutters because Metro's sidewalk law forces private property owners to pay for the upgrading of city infrastructure instead of using public funds.

73.     Metro will not grant Jim the permit to build a new home unless he complies with the requirement to either build sidewalks or pay an in-lieu fee.

74.     Because of Metro's unconstitutional actions, Jim's planned construction has been delayed, resulting in carry over costs and loss of profits.

**Jason Mayes**

75.     Jason Mayes owns the lot at 167 McCall Street, Nashville, Tennessee, 37211.

76.     He acquired the lot to build a primary residence for his family in 2018.

77.     The property is zoned for low-medium density residential.

78.     Metro's property record card appraises the lot at a total value of $52,800.

79.     Metro's property record card assesses the lot's value at $13,200.

80.     The lot at 167 McCall St., Nashville, Tennessee, 37211 is within the Urban Services District and on a street in the Major and Collector Street Plan.

81.     According to Metro's sidewalks requirement database, Metro will only issue a building permit for 167 McCall Street after the property owner agrees to build a new sidewalk.



82.     As shown in the picture, there are no sidewalks on the property.

83.     As shown in the picture, there are no sidewalks connecting to the property.

84.     Through his contractor, Gotham Contracting LLC, Jason attempted to apply for a permit to build a single-family home for his family on or about November 18, 2019.

85.     At that time, Jason learned about the sidewalk law.

86.     Jason requested a waiver from compliance with the sidewalk law on or about November 18, 2019.

87.     Jason cited as grounds that while there was a continuous sidewalk across the street from his property, there were no sidewalks on his block face, and the sidewalk would not connect to other sidewalks.

88.     On or about December 13, 2019, in response to Jason's request for a waiver, Metro Planning issued a recommendation to "Disapprove as requested. Approve with the following conditions: 1. The applicant shall contribute in lieu of construction along the property

frontage. 2. If the site is substantially redeveloped in the future, the redevelopment shall incorporate site work to construct a sidewalk to current standards unless a new sidewalk waiver is approved."

89.     On or about December 16, 2019, Zoning Administrator Jon Michael made the decision to "disapprove as requested" but to approve the option of payment of a fee in-lieu of construction according to the terms outlined by Metro Planning.

90.     Jason's request for a waiver was "approved" to the extent that he would not have to build sidewalks, but would have to pay an in-lieu fee into the pedestrian benefit fund.

91.     Lisa Butler, Zoning Examiner, told Jason's builder that he could not receive his building permit and proceed with construction until Jason agreed to build sidewalks or pay the fee.

92.     Lisa Butler told Jason's builder that he could pay the in-lieu fee while proceeding with an appeal to the BZA, requesting a refund of his payment.

93.     Jason's carrying costs were mounting and he could not afford further delay by waiting for the permit.

94.     On or about January 21, 2020, Jason paid the in-lieu fee of $8,883.21.

95.     On or about January 21, 2020, Metro issued Jason permit no. 2019068294 to construct a single-family home at 167 McCall Street.

96.     On or about January 9, 2020, Jason filed an appeal with the BZA.

97.     On or about March 5, 2020, Jason appeared before the BZA.

98.     Video recording of the March 5, 2020 BZA meeting is available at: <https://www.youtube.com/watch?v=Knae7IG0eH4&list=PLE64E913EE2902895&index=16>. Jason's case begins at 30:10.

99.     As grounds for his appeal, Jason explained to the BZA that he should not have to pay into the in-lieu fund because sidewalks were not going to be built on his side of the street.

100.    Jason's councilwoman, Ginny Welsch, appeared at the meeting on his behalf and confirmed that a sidewalk on the property was not practically necessary and would not be aesthetically pleasing.

101.    Chairman David Taylor said, "[T]his may be the first one that we've had where they went to code first and then appealed the codes department decision."

102.    At that point, an unidentified speaker said that Jason didn't receive "an outright go jump in the lake denial" because Jason was permitted to contribute to the in-lieu fund rather than constructing sidewalks.

103.    An unidentified speaker said:

> You are allowed to obtain a building permit if you meet the requirements for a building permit. For example, if you have a site plan demonstrating that you will in fact build the sidewalks as required by law, which are in fact required here. In the alternative, if you do not wish to build the sidewalks but if you have, or have been given, permission to participate in the sidewalk in-lieu fund as an alternative to such sidewalk construction, then you may put up the fee to do so. The building permit will not walk out the door unless you've complied with the law by either: A) submitting an approved site plan showing the sidewalks, or B) exercising your option to participate in the sidewalk fund. That's an option, it's not a requirement. Getting the permit does require one of those two, and if you want [the permit], that's the way to get it.

104.    BZA member Pepper stated:

> So we've had a lot of these and I always understand the applicant's position, but I always feel like my hands are tied on these because the Metro Council made a policy decision that when you go build a house or you trigger this sidewalk requirement you either have to pay or build. And they even made a policy decision about how much you have to pay. And the only way around that is if there's a hardship and your financial situation can never be a hardship. So I feel like, on these, and this has been the way I've ruled

consistently, is that my hands are tied, I don't see a hardship other than a financial hardship. [...] I get it's a lot of money but I just feel like, when Metro enacted that law they put down a policy and there has to be a hardship shown and we know that a financial consideration – that it costs money – is just not a hardship. [...] That's how I've always come out on it.

105.   BZA member Lawless said:

You're not going to get me not to have someone pay into the in-lieu fund. It's just not going to happen. And it hasn't the whole time I've been on here. Yeah, eighty-eight hundred dollars is a ton of money, however we're also not what our fine council lady is, we're smart enough not to run for politics. So financial hardship isn't one of the criteria I've been able to go with.

106.   Chairman Taylor reiterated that the BZA faced a "dilemma" because Metro Council had passed the sidewalk ordinance.

107.   The BZA denied Jason's appeal, refusing to return any portion of the in-lieu fee paid as a condition of receiving a building permit for 167 McCall Street.

108.   On or about March 6, 2020, the BZA issued an order to this effect.

109.   Jason's home at 167 McCall Street is expected to be completed in November 2020.

110.   Metro refused to grant Jason the necessary permit to construct his home unless he paid into Metro's pedestrian benefit fund to finance Metro's strategic plan for sidewalks and bikeways.

111.   Jason's new home would not, and did not, have any impact on any existing sidewalk on the lot.

112.   If Jason built a sidewalk then it would not connect to any sidewalks, that is, it would have been a sidewalk to nowhere.

113.    Jason's new home would not, and did not, have any impact on any existing curbs or gutters on any street fronting the property.

114.    Jason's new home does not change the use of the property. Even though it is zoned for low-medium density residential, Jason built a single-family home.

115.    If McCall Street was suffering from some deficiency, that deficiency preexisted Jason's planned home construction and has nothing to do with Jason's planned home construction.

116.    Metro's demand that Jason pay to construct sidewalks, curbs, and gutters had nothing to do with any impact on Jason's new home.

**Injury to Plaintiffs**

117.    Metro's sidewalk law has caused and will cause harm to Plaintiffs.

118.    Jim cannot legally construct a new home unless he obtains a permit from Metro.

119.    Jim cannot legally acquire the required permit unless he satisfies the requirements of Metro's sidewalk law that he build sidewalks or pay the in-lieu fee.

120.    The sidewalk law located at Metro Code § 17.20.120 requires Jim spend $7,600 on improvements to city property in order to obtain the permit required to build a new home.

121.    But for Metro's application of the sidewalk law located at Metro Code § 17.20.120 to Jim's permit application, Jim would qualify for, and already have obtained, the requisite permit to build the home.

122.    Because Jim will not agree to either construct a sidewalk or pay a fee, Metro will not give him the permit he needs to develop his property.

123.    Metro's refusal to give Jim his building permit results in economic harm, including, at a minimum, carry over costs and lost profits.

124.    Jason could not legally construct his new home unless he obtained a permit from Metro.

125.    Jason could not legally acquire the necessary permit until he satisfied the requirements of Metro's sidewalk law that he build sidewalks or pay the in-lieu fee.

126.    In order to obtain the required permit, the sidewalk law required Jason to pay an in-lieu fee of $8,883.21 to fund unrelated improvements to city property.

127.    Metro has not returned any actual or future interest in easements or rights-of-way that Jason may have surrendered.

128.    Jason continues to be affected because Metro has not provided restitution for the $8,883.21 paid as an in-lieu fee.

129.    By conditioning the grant of permits required to construct Plaintiffs' new homes on Plaintiffs agreeing to build or pay for unrelated improvements to Metro infrastructure, Metro is attempting to coerce, and has coerced, Plaintiffs into forfeiting their constitutional right to not have property taken without just compensation.

130.    By conditioning the grant of permits required to construct Plaintiffs' new homes on Plaintiffs agreeing to build or pay for unrelated improvements to Metro infrastructure, Metro is attempting to coerce, and has coerced, Plaintiffs to pay for Metro's property when they have no legal obligation to do so.

131.    Because of the application of the sidewalk law located at Metro Code § 17.20.120, Plaintiffs have been denied the right to build homes on their properties.

132.    There is no public health, safety, environmental, or other legitimate reason for Metro to deny Plaintiffs' rights to build their homes.

133.    Metro's refusal to grant Plaintiffs the right to build homes unless they pay thousands of dollars for improvements to Metro infrastructure unduly burdens their right to develop their properties and use and enjoy their homes when those improvements are unrelated to harm created by Plaintiffs' construction of new homes.

## V.  Claims

## <u>Claim 1 - Unconstitutional Fifth Amendment Exaction</u>

134.    Plaintiffs re-allege the allegations in this Complaint as though set forth in this section.

135.    Metro's sidewalk law located at Metro Code § 17.20.120 demands that property owners pay for unrelated improvements to city property as a condition of building new homes.

136.    The Supreme Court has repeatedly ruled in a variety of contexts that the government may not condition its land use permits upon the condition that the person agree to a taking without just compensation. *Koontz v. St. John's River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013) (quoting *Regan v. Taxation without Representation of Wash.*, 461 U.S. 540, 545 (1983)). This is called an "exaction," and it is an extension of the unconstitutional conditions doctrine, which "vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up." *Id.*; *see also Dolan v. City of Tigard*, 512 U.S. 374, 384 (1994) ("One of the principal purposes of the Takings Clause is 'to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.'") (quoting *Armstrong v. United States*, 364 U.S. 40, 49 (1960)).

137.    The Takings Clause prohibits Metro from forcing private property owners to choose between receiving a building permit and giving up the right to receive just compensation for a taking.

20

138. Localities may constitutionally exact property or money from property owners as a condition of the exercise of their property rights only if:

a. The exaction has a direct nexus to a public impact arising from the property owners' exercise of their property rights; and,

b. The exaction is roughly proportionate in both nature and extent to the public impact arising from the property owners' exercise of their property rights.

139. Metro's application of the sidewalk law located at Metro Code § 17.20.120 to Plaintiffs and every other similarly situated property owner imposed, and continues to impose, an unconstitutional condition on the exercise of Fifth Amendment rights and property rights and constitutes an unconstitutional exaction.

140. Metro has required and continues to require property owners, including Plaintiffs, to surrender their right to receive just compensation for a taking in exchange for a permit, specifically by requiring Plaintiffs build sidewalks, donate rights-of-way and/or easements, or pay the in-lieu fee, in exchange for a permit to build on their own property.

141. These requirements lack any nexus to any alleged adverse impact with a public purpose directly caused by the developments Plaintiffs have sought and/or will seek through their building permits.

142. The construction of a new home does not affect the property's zoning classification. Constructing a home on a lot as already allowed under existing zoning will not cause any impacts to the lot or zone.

143. If McCall Street or Acklen Park Drive were suffering from some deficiency, it preexisted Plaintiffs' construction and had nothing to do with their usages.

144.     The burdens imposed by Metro's sidewalk law located at Metro Code § 17.20.120 are not roughly proportional, in nature or extent, to the impact from the construction of a new home, both facially and as-applied to Plaintiffs.

145.     As applied to Jim's home construction, building a sidewalk would create waterflow problems to the surrounding neighbors that Metro then demands Jim pay a fee to avoid creating.

146.     But for Metro's application at Metro's sidewalk law located at Metro Code § 17.20.120 to Jim's permit application to construct a new home, he would qualify for and have already obtained the requisite building permit to complete his planned new home.

147.     Unless Metro's application of the sidewalk law to Jim's permit application is declared unconstitutional and enjoined, Jim will continue to suffer grave and irreparable harm.

148.     But for Metro application of Metro's sidewalk law to Jason's permit application to construct a new home, he would have qualified for the requisite building permit to complete his planned new home without paying an in-lieu fee.

149.     Unless Metro's application of the sidewalk law located at Metro Code § 17.20.120 to Jason's permit application is declared unconstitutional, enjoined, and his property returned to him, Jason will continue to suffer grave and irreparable harm.

### Claim 2 – Unjust Enrichment

150.     Plaintiffs re-allege the allegations in this Complaint as though set forth in this section.

151.     A suit seeking the return of specific funds wrongfully collected or held may be maintained in equity.

152.   Metro has acquired and/or is in possession of funds that it is not entitled to retain, including at a minimum, in-lieu fees paid by Jason and others.

153.   Jason conferred a benefit upon Metro when he contributed to Metro's fund.

154.   If Jim were to pay, he would confer a benefit upon Metro.

155.   Metro appreciated, and will continue to appreciate, the benefits from payment of an in-lieu fee by accepting payment with the intention that it be used to fund city infrastructure.

156.   Because the simple act of building a new home does not create a lack of city sidewalks or a need for more sidewalks, it is unjust for Metro to retain the fees acquired from Jason and others.

157.   Through its sidewalk law, Metro has acquired funds rightfully belonging to Jason and others.

158.   Metro acquired these funds through an unconstitutional exaction.

159.   Jason is entitled to a refund of all unlawfully-coerced fees paid to Metro, as well as a restoration of any rights-of-way and/or easements.

## VI. Request for Relief

Plaintiffs request of this Court the following relief:

160.   Declare that Metro's sidewalk law located at Metro Code § 17.20.120 violates the Fifth and Fourteenth Amendments to the United States Constitution, both facially and as-applied to Plaintiffs.

161.   Declare that Metro's requirement to construct sidewalks, curbs, and gutters as a permit condition for single or two-family residential homes is an unconstitutional condition in violation of the Fifth and Fourteenth Amendments of the United States Constitution, both facially and as-applied to Plaintiffs.

23

162.    Declare that Metro has been and continues to be unjustly enriched through the imposition of the in-lieu fee both facially and as-applied to Plaintiffs.

163.    Permanently enjoin Metro from further applying any unconstitutional condition via Metro's sidewalk law located at Metro Code § 17.20.120, both facially and as-applied to Plaintiffs.

164.    Permanently enjoin Metro from enforcement of Metro's sidewalk law located at Metro Code § 17.20.120, both facially and as-applied to Plaintiffs.

165.    Mandate return of the in-lieu fees as restitution.

166.    Mandate the return of any easements or rights-of-way dedications, or future interests in the same, as restitution.

167.    Award attorneys' fees and costs in this action pursuant to 42 U.S.C. § 1988, and;

168.    Such other relief as the Court deems just, equitable, necessary and proper.

Dated: <u>October 27, 2020</u>.                    Respectfully submitted,


                                        <u> s/ Meggan S. Dewitt</u>
                                        MEGGAN S. DEWITT
                                        D.C. Bar No. 1047631

                                        <u>s/ B. H. Boucek</u>
                                        BRADEN H. BOUCEK
                                        B.P.R. No. 021399
                                        BEACON CENTER
                                        201 4th Ave. N., Suite 1820
                                        Nashville, TN 37219
                                        Tel.: 615/383.6431
                                        Fax: 615/383.6432
                                        braden@beacontn.org
                                        meggan@beacontn.org

s/ Kimberly S. Hermann
KIMBERLY S. HERMANN (admission pending)
Georgia Bar No. 646473
Southeastern Legal Foundation
560 West Crossville Road, Suite 104
Roswell, GA 30075
Tel.: 770/977.2131
khermann@southeasternlegal.org
*Counsel for Plaintiffs*