IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JAMES KNIGHT, JASON MAYES, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 3:20-cv-00922 |
| | ) | Judge Trauger |
| THE METROPOLITAN GOVERNMENT | ) | Magistrate Judge Holmes |
| OF NASHVILLE AND DAVIDSON | ) | |
| COUNTY, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFFS' RESPONSE TO METRO'S MOTION FOR SUMMARY JUDGMENT

Plaintiffs respectfully respond in opposition to the Metropolitan Government of Nashville & Davidson County's (Metro's) Motion for Summary Judgment. Plaintiffs agree that there is no dispute in material fact, and that this case is appropriate for summary judgment. Metro, however, misconstrues the law surrounding exactions, a form of taking recognized by the Supreme Court and courts within this Circuit as unconstitutional irrespective of whether it is imposed by law or by an administrator. As a result, Metro's motion fails as a matter of law and should be denied.

## **INTRODUCTION**

The constitutional standard is dispositive in this case. The United States Supreme Court has long recognized the standard set forth in *Nollan v. California Coastal Commission*, 483 U.S. 825 (1987), *Dolan v. City of Tigard*, 512 U.S. 374 (1994), and *Koontz v. St. John's River Water Management District*, 570 U.S. 595 (2013), for reviewing takings claims against permit conditions like Metro's sidewalk ordinance, codified at Metro Code § 17.20.120 *et seq*. The standard is so well-settled that the Supreme Court has repeatedly, and as recently as this summer, recognized

exactions as a unique category of takings separate and distinct from regulatory takings. *See Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2079 (2021); *see also Lingle v. Chevron, U.S.A, Inc.*, 544 U.S. 528, 538 (2005). Under the correct standard, the government must demonstrate an essential nexus and rough proportionality between the imposed condition and any perceived impact of the proposed land use. *Cedar Point*, 141 S. Ct. at 2079 ("The inquiry . . . is whether the permit condition bears an 'essential nexus' and 'rough proportionality' to the impact of the proposed use of the property.") (citing *Dolan*, 512 U.S., at 386, 391; *Koontz*, 570 U.S. at 599).[1]

Knowing it loses under *Nollan*, *Dolan*, and *Koontz*, Metro also attempts to distinguish this case from Supreme Court precedent by arguing that this case involves a condition imposed through legislation (the sidewalk ordinance), whereas the conditions in *Nollan*, *Dolan*, and *Koontz* were imposed through administrative action. But the conditions in those Supreme Court cases *were* legislative in their origin. They were just applied by an administrator the same way as the sidewalk ordinance. The legislative/adjudicative distinction is thus an artificial one, albeit one that some lower courts have endorsed in non-binding opinions. While Metro relates a split in authority at great length, it does not cite any authority within the Sixth Circuit that is directly on point. Notably, it missed *F.P. Dev., LLC, v. Charter Township of Canton*, 456 F. Supp. 3d 879 (E.D. Mich. 2020) (*Canton*), where the court ruled that conditioning a tree removal permit on property owners planting new trees or paying an in-lieu fee was an unconstitutional exaction, even though the

---

[1] In its Response to Plaintiffs' Motion for Summary Judgment, Metro argues for the first time that it meets the *Nollan/Dolan* standard. (Doc. 26 at 3.) But as Plaintiffs have already explained in their opening brief, the sidewalk ordinance lacks any essential nexus or rough proportionality to the alleged impact of Plaintiffs' new homes. And as Plaintiffs will further explain in their Reply, Metro badly misconstrues the two-part test.

2

condition was imposed through legislation.[2] The *Canton* decision is fully consistent with all precedent in the Sixth Circuit regarding the broader issue of unconstitutional conditions.[3]

Unconstitutional conditions do not become permissible when they are demanded by legislators instead of administrators. This is just as true in the Fifth Amendment context as it would be with any other constitutional right. Because there is no dispute that Metro's sidewalk condition lacks an essential nexus or rough proportionality, this case is appropriate for summary judgment.

## LEGAL STANDARD

The standard for determining whether summary judgment is appropriate is whether there is a "sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distribs. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quotation omitted). All facts and evidence must be construed in light of the non-moving party. *Tolan v. Cotton*, 572 U.S. 650, 660 (2014). To oppose a well-supported motion for summary judgment, the opposing party must produce "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968). "The fact that both parties have moved for summary judgment does not mean that the court

---

[2] The District Court also struck down the ordinance on regulatory takings grounds for separate reasons. The *Canton* decision is currently pending a decision from the Sixth Circuit. *See F.P. Dev., LLC v. Charter Twp. of Canton*, No. 20-1447 (6th Cir. 2020).

[3] *See, e.g.*, *Planned Parenthood of Greater Ohio v. Hodges*, 917 F.3d 908 (6th Cir. 2019) (relying on *Koontz* to uphold a legislatively-imposed condition because plaintiffs did not have a constitutional right to perform abortions); *Sutton v. Parker*, No. 3:19-CV-00005, 2019 U.S. Dist. LEXIS 151382 (M.D. Tenn. Sept. 5, 2019) (applying *Planned Parenthood* and *Koontz* when assessing execution protocols established by the state legislature and applied by a state agency), *aff'd*, 800 Fed. Appx. 397 (6th Cir. 2020); *West v. Parker*, No. 3:19-CV-00006, 2019 U.S. Dist. LEXIS 92494 (M.D. Tenn. June 3, 2019) (same); *Woodard v. Ohio Adult Parole Auth.*, 107 F.3d 1178 (6th Cir. 1997) (finding that a law requiring inmates to admit guilt as a condition of clemency placed an unconstitutional condition on the Fifth Amendment right against self-incrimination), *rev'd on other grounds*, 523 U.S. 272 (1998).

3

must grant judgment as a matter of law for one side or the other." *Taft Broad. Co. v. U.S.*, 929 F.2d 240, 248 (6th Cir. 1991). Summary judgment is appropriate where, as here, the outcome of the case turns on a matter of law, like the proper constitutional standard. Fed. R. Civ. P. 56(a). Plaintiffs agree (1) this case turns on a matter of law, and (2) is ripe for summary judgment.

## SUMMARY OF ARGUMENT

The Fifth Amendment to the United States Constitution prohibits the government from taking private property for public use without providing a property owner just compensation. U.S. Const. amend. V. Takings come in many forms, including physical invasion, legislative enactment, and conditions placed on the right to build or alter private property. *See Lingle*, 544 U.S. at 536–37. When the government places a condition on the use of property, the condition will be reviewed as a taking. *Dolan*, 512 U.S. at 385. Despite Metro's attempt to offer a myriad of standards and tests, the *only* test at issue—indeed the only argument Plaintiffs have ever put forth—is whether the sidewalk ordinance is a condition that unconstitutionally burdens Plaintiffs' rights to build homes on their properties pursuant to *Nollan*, *Dolan*, and *Koontz*.

Moreover, it does not—and should not—matter which body of government violates a person's constitutional rights. Metro suggests that the unconstitutional conditions doctrine only applies to takings imposed by an administrative body, but its argument defies logic for a few reasons. First, all exactions imposed by administrative bodies are, by their origins, legislative, and then imposed by an administrator. Second, from a property owner's perspective, a taking is a taking, just like a free speech violation is a free speech violation. Whether the government's condition was legislatively or administratively mandated, it is all the same to Plaintiffs.

4

# ARGUMENT

I. **The nexus and proportionality standard, as described in *Nollan*, *Dolan*, and *Koontz*, is the appropriate standard to apply in this case.**

The Supreme Court has explained that there are three primary takings doctrines: physical takings, regulatory takings, and takings based on the unconstitutional conditions doctrine. *Lingle*, 544 U.S. at 538. A taking occurs when the government (1) directly appropriates or physically invades private property (a physical taking), *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 432–33 (1982); (2) enacts or applies a regulation that is "so onerous that its effect is tantamount to a direct appropriation or ouster," (a regulatory taking), *Lingle*, 544 U.S. at 537; or (3) places conditions on a property owner's right to use or build on her property that lack any reasonable relationship to the development (an unconstitutional condition, or exaction), *Koontz*, 570 U.S. 606-07; *see also Dolan*, 512 U.S. 374; *Nollan*, 483 U.S. 825.[4]

Plaintiffs do not seek to belabor the reasons why Metro's sidewalk ordinance is unconstitutional. However, it is worth repeating that the ordinance imposes conditions that burden the right not to have property taken without compensation in two respects. First, it requires property owners to either build city sidewalks—quintessentially public infrastructure—or pay the city money in the form of an in-lieu fee. Metro. Code § 17.20.120(A)(2), (D). Second, it requires that they also surrender easements and rights-of-way. *Id*. at § 17.20.120(E). Although Metro does not appear to have followed its own law by demanding an easement from Jason (Doc. 23, Def.'s SUMF ¶ 9)—at least not yet—under the plain language of the ordinance, Jim must agree to provide Metro with an easement. *See* Metro. Code § 17.20.120(E). By abusing its permitting authority to

---

[4] Additionally, a regulation that *limits* the use of property (e.g., a zoning regulation) is reviewed differently from one that demands or *takes* property. The Supreme Court made this distinction in *Dolan*. 512 U.S. at 385.

5

coerce the surrender of property that Metro wants, but cannot take outright, Metro has burdened the right not to have property taken without compensation. This plainly amounts to an exaction. *See Koontz,* 570 U.S. at 607 ("Extortionate demands for property in the land-use permitting context run afoul of the Takings Clause not because they take property but because they impermissibly burden the right not to have property taken without just compensation.").

### A. The unconstitutional conditions doctrine prohibits any government body from holding a benefit hostage in exchange for surrendering a constitutional right.

In its most basic formulation, the exactions doctrine is a "special application" of the unconstitutional conditions doctrine, applicable to a variety of constitutional rights. *Id*. at 604. The unconstitutional conditions doctrine provides that a government may not require a person to give up a constitutional right in exchange for a discretionary government benefit. *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). In the seminal unconstitutional conditions case, the Supreme Court held that a government may not do indirectly that which it could not accomplish directly:

> [T]he power of the state […] is not unlimited; and one of the limitations is that it may not impose conditions which require relinquishment of constitutional rights. If the state may compel the surrender of one constitutional right as a condition of its favor, it may, in like manner, compel a surrender of all. It is inconceivable that guarantees embedded in the Constitution of the United States may thus be manipulated out of existence.

*Frost & Frost Trucking Co. v. Railroad Comm'n. of Cal.*, 271 U.S. 583, 594 (1926) (striking down a state law that conditioned the right of commercial carriers to operate on public highways). "[The] doctrine holds that even if a state has absolute discretion to grant or deny any individual a privilege or benefit, it cannot grant the privilege subject to conditions that improperly 'coerce,' 'pressure,' or 'induce' the waiver of that person's constitutional rights." Richard A. Epstein, Bargaining with the State 5 (1993).

6

Through *Nollan*, *Dolan*, and *Koontz*, the Supreme Court made clear that the unconstitutional conditions doctrine also applies to protect property rights against coerced waivers, referred to as "exactions." *Lingle*, 544 U.S. at 547 (explaining, in a unanimous opinion, that the test set forth in *Nollan* and *Dolan* constitute a "special application" of the unconstitutional conditions doctrine). As the Supreme Court explained, the unconstitutional conditions doctrine recognizes a constitutional injury where a government forces a property owner to choose "between (a) foregoing development opportunities, while preserving Fifth Amendment rights and (b) sacrificing those rights in order to obtain authorization to carry out development." Luke A. Wake & Jarod M. Bona, *Legislative Exactions After* Koontz v. St. Johns River Management, 27 Geo. Int'l Envtl. L. Rev. 539, 569 (2015). A finding that such a condition is unconstitutional is the equivalent of finding that the demand "amount[s] to a *per se* taking[.]" *Koontz*, 570 U.S. at 615 (citing *Dolan*, 512 U.S. at 384; *Nollan*, 483 U.S. at 831).

An individual's constitutional right does not hinge on whether the government violates that right through legislative or administrative action. *See Stop the Beach Renourishment v. Florida Dep't of Env't Prot.*, 560 U.S. 702 (2012) (emphasizing that the Takings Clause is unconcerned with which "particular state actor is" burdening property rights).[5] The Supreme Court's application of the unconstitutional conditions doctrine is the same when reviewing conditions imposed by statute. *See, e.g.*, *44 Liquormart Inc. v. Rhode Island*, 517 U.S. 484, 512–13 (1996) (striking down a statute conditioning the right to do business on a waiver of constitutional rights). This is the

---

[5] The Takings Clause applies equally to all coordinate branches of state government under the Fourteenth Amendment. Therefore, it cannot be that the Takings Clause imposes a different standard of review for actions violating property rights when carried out by a legislative body where that same action would constitute a taking where carried out by an administrative agency.

7

requisite approach because "[i]t is inconceivable that guaranties embedded in the Constitution of the United States may [by act of legislation] be manipulated out of existence." *Frost & Frost Trucking Co.*, 271 U.S. at 594. In the Fifth Amendment context, although judicial scrutiny may vary based on the type of taking, it does not vary based on which body of government initiated the taking. *See, e.g.*, *Nollan*, 483 U.S. at 828–30; *Dolan*, 512 U.S. at 377–78; *Koontz*, 570 U.S. at 599–602. In short, if the government can circumvent the Fifth Amendment by passing a law that does what an administrator could not, then it can do the same with the First or Fourth Amendments.

Here, as in *Nollan*, *Dolan*, and *Koontz*, the condition imposed by the government comes in the form of private mitigation of a public issue as a condition of receiving a land-use permit. Plaintiffs do not dispute that the condition here is imposed through legislation. But the conditions in *Nollan*, *Dolan*, and *Koontz* were *also* imposed through legislation. *See Nollan*, 483 U.S. at 828–30 (*state law* requiring dedication of beachfront property for a public access point as a condition to obtain a development permit), *Dolan*, 512 U.S. at 377–78 (*city land-use planning ordinance* requiring dedication of property for a bike path and greenway as a condition to obtain a permit), and *Koontz*, 570 U.S. at 599–602 (*state law* requiring an in-lieu fee as a condition to obtain a development permit for land designated as wetlands). There is no escaping the fact that the Fifth Amendment exaction framework is the constitutional standard here.

Metro's law is no more "generally applicable," than the laws at issue in *Nollan*, *Dolan*, and *Koontz*. In all three cases, a local administrative body had some discretion to grant or deny building permits. *Nollan*, 483 U.S. at 828-29; *Dolan*, 512 U.S. at 379-82; *Koontz*, 570 U.S. at 600-02. Much like those cases, the Metro Zoning Administrator and Board of Zoning Appeals have authority to grant or deny building permits to property owners like Jim and Jason under the sidewalk ordinance. Therefore, contrary to Metro's assertion, the sidewalk law is not generally applicable. *See, e.g.*,

8

*Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877-78 (2021) ("A law is not generally applicable if it 'invite[s]' the government to consider the particular reasons for a person's conduct by providing 'a mechanism for individualized exemptions.'").

### B. The Sixth Circuit Court of Appeals has relied on *Nollan*, *Dolan*, and *Koontz* to strike down legislatively-imposed unconstitutional conditions.

The Sixth Circuit Court of Appeals has frequently and in a variety of contexts examined legislatively-imposed unconstitutional conditions, never once turning them away because the condition was legislatively mandated. For example, in 2019, the Sixth Circuit held that the Ohio legislature did not place an unconstitutional condition on Planned Parenthood when a statute effectively ended state funding of the organization. *Planned Parenthood*, 917 F.3d at 916. The statute prohibited any entity from using state funds to "(1) Perform nontherapeutic abortions; (2) Promote nontherapeutic abortions; (3) Contract with any entity that performs or promotes nontherapeutic abortions; [or] (4) Become or continue to be an affiliate of any entity that performs or promotes nontherapeutic abortions." *Id.* at 910. Planned Parenthood argued that this violated the Due Process Clause and the First Amendment because the organization had to agree to stop performing or promoting abortions to receive government funding. *Id.* at 911.

Relying on *Koontz*, the court upheld the statute, holding that "[i]f there's no right, there's no unconstitutional condition." *Id.* at 916. Thus, any claim under the unconstitutional conditions doctrine must begin by examining the constitutional right allegedly infringed. The court held that abortion providers lack a constitutional right to perform abortions and that the condition was not unconstitutional because women could still seek abortions. *Id.* at 912. The court, however, left no doubt that if the constitutional right existed, it would not have mattered that the legislature, and not an administrator, burdened its exercise.

Shortly thereafter, this Court relied on the *Planned Parenthood* decision in two cases involving death row inmates. *See Sutton*, 2019 U.S. Dist. LEXIS 151382; *West*, 2019 U.S. Dist. LEXIS 92494. Several inmates filed a Section 1983 claim against county officials arguing, among other things, that lethal injections were cruel and unusual punishment and that they were instead entitled to execution by electrocution. *Sutton,* 2019 U.S. Dist. LEXIS 151382 at *14; *West*, 2019 U.S. Dist. LEXIS 92494 at *18. The plaintiffs argued that the current execution protocols—established by the state legislature and the Tennessee Department of Correction (TDOC)—were an unconstitutional condition because "Defendants are conditioning the *benefit* of electrocution on the *waiver* of [Plaintiffs'] right to assert the unconstitutionality of electrocution in court." *Sutton,* 2019 U.S. Dist. LEXIS 151382 at *60–63; *West*, 2019 U.S. Dist. LEXIS 92494 at *58–62.

This Court turned to *Planned Parenthood* (and, by extension, *Koontz*), to assess these claims. *Sutton* at *62–63; *West* at *61–62. It held that neither state law nor TDOC required the plaintiffs to waive the right to challenge electrocution in the future. *Sutton* at *63; *West* at *62. Thus, there was no unconstitutional condition placed on the plaintiffs. *Id*. Notably, the decisions did not distinguish between legislatively- and administratively-imposed conditions.

Similarly, in *Woodard*, the Sixth Circuit Court of Appeals looked to *Nollan* and *Dolan* to hold that the Ohio legislature imposed an unconstitutional condition when it statutorily required inmates seeking clemency to admit their guilt. 107 F.3d at 1188–91. The court held that requiring inmates to admit guilt as a condition of clemency constituted a waiver of their Fifth Amendment rights. *Id.* at 1189. The United States Supreme Court ultimately reversed the decision, reasoning that inmates voluntarily participate in clemency proceedings; as such, the possibility of clemency was merely a benefit, not a constitutionally guaranteed right. 523 U.S. at 285–88.

10

Although the Supreme Court reversed on the basis that clemency was not a protected Fifth Amendment right, one issue was not in dispute: whether courts could hear the claim in the first place. Neither court gave any weight to the fact that a state legislature imposed the clemency condition. *See* 107 F.3d at 1189–93 (listing various problems with applying the unconstitutional conditions doctrine but excluding any discussion about differences between administratively- and legislatively-imposed conditions); 523 U.S. at 286–88 (analyzing the nature of the constitutional right and benefit without considering the origin of the condition).

Just recently, the Sixth Circuit heard oral argument in *Canton* where, through an ordinance, a municipality demanded that property owners either replace trees or pay an in-lieu fee in exchange for a tree removal permit—much like the sidewalk ordinance here. *See Canton*, No. 20-1447 (6th Cir. 2020). There, the district court held that the law was a plainly unconstitutional exaction under *Nollan*, *Dolan*, and *Koontz*. *Canton*, 456 F. Supp. 3d at 892–95. Metro ignores *Canton*.

**C. Many other courts have applied *Nollan*, *Dolan*, and *Koontz* without regard to which body of government imposed the condition.**

Finally, many other courts have also applied *Nollan*, *Dolan*, and *Koontz* to legislative exactions. *See, e.g., City of Portsmouth v. Schlesinger,* 57 F.3d 12, 16-17 (1st Cir. 1995) (reviewing ordinances that conditioned permit approvals on requirements to pay impact fees); *Com. Builders of N. Cal. v. City of Sacramento*, 941 F.2d 872, 875 (9th Cir. 1991) (analyzing city ordinance requiring dedication of affordable housing units); *Levin v. City and Cty. of San Francisco*, 71 F. Supp. 3d 1072, 1089 (N.D. Cal. 2014) (finding city ordinance requiring property owners to pay a lump sum to displaced tenants as a condition for withdrawing rent-controlled property from the rental market unconstitutional); *Cheatham v. City of Hartselle*, 2015 U.S. Dist. LEXIS 25360, at *8–13 (N.D. Ala. March 3, 2015) (finding state law requiring plaintiffs to set aside right-of-way

11

failed to meet the rough proportionality standard); *Nat'l Ass'n of Home Builders v. Chesterfield Cty.*, 907 F. Supp. 166, 168–69 (E.D. Va. 1995) (finding ordinance requiring a cash proffer in exchange for a favorable action on rezoning applications violated the Takings Clause; *Town of Flower Mound v. Stafford Estates L.P.*, 135 S.W.3d 620, 641 (Tex. 2004) (striking down a town ordinance imposing road improvement requirements as a condition to obtain a development permit); *Curtis v. Town of S. Thomaston*, 708 A.2d 657, 659–60 (Me. 1998) (reviewing town ordinance imposing an easement for fire prevention purposes as a condition for subdivision approval); *N. State Home Builders Ass'n, Inc. v. Cty. of Du Page*, 649 N.E.2d 384, 397 (Ill. 1995) (finding state statutes and local ordinances imposing transportation impact fees on new developments unconstitutional under *Nollan* and *Dolan*); *Delchester Developers, L.P. v. Zoning Hearing Bd.*, 161 A.3d 1081, 1099 (Commw. Ct. Pa. 2017) (assessing a local zoning ordinance under the *Nollan*/*Dolan* framework: "in the context of an application for zoning relief, the issue of whether a requirement in an ordinance represents an unconstitutional condition may also arise").

Metro improperly suggests that a majority of courts make a distinction between legislatively- and administratively-imposed exactions. (Doc. 22, Def.'s Mem. at 12.) Even if that were true, the distinction is impractical at best. It should make no difference whether a legislature or government agency is violating the Constitution. It wouldn't make a difference in the free speech or search and seizure contexts. It certainly makes no difference to Plaintiffs.

## II. None of Metro's suggested tests are appropriate for the permit condition imposed under the sidewalk ordinance.

In Metro's memorandum, it ignores *Nollan*/*Dolan* claims and instead encourages this Court to look to another test—*any* other test—to assess the sidewalk ordinance. It tries: (1) the "rational basis" test. (Doc. 22, Def.'s Mem. at 6-8); (2) the "reasonable relationship" test. (Id. at 20); (3) the

12

"dual rational nexus" test, which Metro thinks is perhaps the reasonable relationship test in disguise. (Id. at 21) (describing it as "confusing" and "misleading" for courts to call these tests distinct, and arguing "it is more accurate" to view them as different "versions of the reasonable relationship test"); and (4) the *Penn Central* test for regulatory takings. (Id. at 24 (citing *Penn. Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978).) Metro's jumble can be sorted into two categories: rational basis and the *Penn Central* test. Neither standard applies to the sidewalk mandate that is before this Court.

### A.  This is not a regulatory taking subject to the *Penn Central* test.

As described above, the Supreme Court in *Lingle* defined three primary categories of Fifth Amendment takings: physical invasions, takings that deprive a property of all economic use, and unconstitutional exactions. 544 U.S. at 538. The Court held that the *Penn Central* test—upon which Metro relies heavily—applies *only* to regulatory takings that do *not* fall within one of those three categories. *Id*. ("Outside these two relatively narrow categories (and the special context of land-use exactions discussed below [. . .]), regulatory takings challenges are governed by the standards set forth in *Penn Central*."). The Court took care to relate the unique nature of exactions claims under the *Nollan*/*Dolan* framework, like the claims asserted by Plaintiffs here, and to describe how they differ from other takings claims. *Id*. at 546-548. It concluded that its regulatory takings decision "should not be read to disturb these [*Nollan*/*Dolan*] precedents." *Id*. at 548.

Likewise, the Tennessee Supreme Court recently recognized that exactions-style takings are distinct from regulatory takings. *Phillips v. Montgomery Cty.*, 442 S.W.3d 233, 240 n.9 (Tenn. 2014). There, the plaintiffs brought a regulatory takings claim when a municipality denied their proposed subdivision plan. *Id*. at 236. Unlike the present case, where Metro conditions receipt of a building permit on Plaintiffs' agreement to build sidewalks or pay an in-lieu fee, the municipality

13

in *Phillips* simply determined it would not be in the public's "best interest" to allow the plaintiffs to build a subdivision. *Id*. In this way, there was no condition to challenge in *Phillips*. The court assessed the three primary categories of takings described in *Lingle* before sorting the claim into the fourth category of regulatory takings subject to the *Penn Central* test. *Id*. at 240 n.9, 244.

### B. The Rational Basis or "Reasonable Relationship" Tests Do Not Apply to a Takings Claim.

While Metro grasps for any test other than the one set forth in *Nollan*, *Dolan*, and *Koontz*, it primarily demands the rational basis test in seeking summary judgment. But the rational basis test does not apply to Fifth Amendment takings claims; the test applies *only* to certain Fourteenth Amendment claims like substantive due process/equal protection, *not* to rights enumerated in the Bill of Rights. *Compare Roman Catholic Diocese v. Cuomo*, 141 S. Ct. 63, 70 (2020) (Gorsuch, J., concurring) ("Rational basis review is the test this Court *normally* applies to Fourteenth Amendment challenges, so long as they do not involve suspect classifications based on race or some other ground, or a claim of fundamental right.") (emphasis in original), *with District of Columbia v. Heller*, 554 U.S. 570, 628 n.27 (2008) ("Obviously, the [rational basis] test could not be used to evaluate the extent to which a legislature may regulate a specific, enumerated right, be it the freedom of speech, the guarantee of double jeopardy, the right to counsel, or the right to keep and bear arms.") (citing *United States v. Carolene Products Co.*, 303 U.S. 144, 152 n.4 (1938)).[6]

---

[6] None of Metro's cases support its argument for rational basis. (Def.'s Mem. at 6, Doc. 22.) Only two used the rational basis test at all: *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365 (1926) and the unpublished state court case of *Consol. Waste Sys., LLC v. Metro. Gov't of Nashville*, 2005 Tenn. App. LEXIS 382 (Tenn. Ct. App. June 30, 2005). And, unlike the sidewalk ordinance, all of Metro's cases concerned laws that imposed limits on the use of property but did not demand its total surrender. *See Village of Euclid*, 272 U.S. at 388; *E. Enters. v. Apfel*, 524 U.S. 498, 523 (1998) (Congress's allocation scheme for funding health benefits for coal miners was not "an instance in which the government directly appropriates private property for its own use."); *Lingle*, 544 U.S.

14

In *Nollan,* the majority opinion outright rejected the dissent's effort to employ rational basis review. 483 U.S. at 840–41. Likewise, in *Dolan*, the Supreme Court declined to incorporate the "reasonable relationship" test into its exactions analysis precisely "because the term 'reasonable relationship' seems confusingly similar to the term 'rational basis' which describes the minimal level of scrutiny under the Equal Protection Clause of the Fourteenth Amendment." 512 U.S. at 391. The Court rejected the idea that a "city's conditional demands for part of petitioner's property," could be treated as a mere "business regulation" when the law is challenged "on the ground that it violates a provision of the Bill of Rights." *Id*. at 392. If it were so simple to skirt judicial review, then warrantless searches of a business, or a prohibition on advertising, would likewise fall under the rational basis test. *Id*. The same logic applies to the Fifth Amendment. *Id*. ("We see no reason why the Takings Clause of the Fifth Amendment, as much a part of the Bill of Rights as the First Amendment or Fourth Amendment, should be relegated to the status of a poor relation in these comparable circumstances.").

Under the Fifth Amendment, it does not matter if a law has a public purpose that is rationally related to taking private property. *See Nollan*, 483 U.S. at 841 ("The Commission may well be right that it is a good idea, but that does not establish that the Nollans (and other coastal residents) alone can be compelled to contribute to its realization."). An exaction must still meet the essential nexus and rough proportionality requirements. *Cedar Point*, 141 S. Ct. at 2079. When Metro leverages its permitting authority to coerce the surrender of property, it must comport with

---

at 547–48 (zoning regulation did not take property, but rather limited the amount of rent an oil company can charge); *Phillips*, 442 S.W.3d at 236 (denial of proposed use of land as a subdivision); *Mobile Home City of Chattanooga v. Hamilton Cty*., 552 S.W.2d 86, 87 (Tenn. Ct. App. 1976) (finding zoning regulation constitutional because it only imposed size and frontage limits, rather than take the entire property).

the Fifth Amendment, regardless of whether its goals are legitimate. *See Nollan*, 483 U.S. at 841–42 ("California is free to advance its 'comprehensive program,' if it wishes, by using its power of eminent domain for this 'public purpose,' see U.S. Const., Amdt. 5; but if it wants an easement across the Nollans' property, it must pay for it.").

Plaintiffs bring a Fifth Amendment takings claim, not a Fourteenth Amendment claim. They do not challenge Metro's ability to build sidewalks, just Metro's demand that private parties bear the cost. And when the government demands property as a condition of receiving a permit, it is a taking. Neither the rational basis nor reasonable relationship test applies.

### III. Metro is unjustly enriched by collection of unconstitutional in-lieu fees and restitution is the proper remedy.

Metro is not entitled to summary judgment on the unjust enrichment claim. Jason conferred a benefit by paying a fee that the city appreciated when it built sidewalks on someone else's property miles away from Jason's home. Restitution is a well-recognized remedy under Section 1983 and unjust enrichment.

Plaintiffs brought this action under Section 1983, including Claim 2, an unjust enrichment claim. (Compl. ¶¶ 1, 22, Doc. 1.) The elements of unjust enrichment are: (1) plaintiff conferred a benefit on defendant; (2) defendant appreciated the benefit; and (3) it would be unjust for the defendant to retain the benefit. *Lawyers Title Ins. Corp. v. United Am. Bank of Memphis*, 21 F. Supp. 2d 785, 805 (W.D. Tenn. 1998) (quoting *B & L Corp. v. Thomas & Thorngren, Inc.*, 917 S.W.2d 674, 680 (Tenn. Ct. App. 1995)).

### A. Metro is not entitled to summary judgment on the unjust enrichment claim.

Metro never relates the elements of an unjust enrichment claim. (Doc. 22, Def.'s Mem. at 28-30.) Metro ignores that Tennessee state and federal courts consistently allow plaintiffs to sue

16

municipalities under a theory of unjust enrichment. *See Lebanon v. Baird*, 756 S.W.2d 236, 245 (Tenn. 1988); *Sircy v. Metro. Gov't of Nashville & Davidson County*, 182 S.W.3d 820–21 (Tenn. App. 2005); *Noel v. Metro. Gov't of Nashville & Davidson County*, 2014 U.S. Dist. LEXIS 10252, at *12 (M.D. Tenn. January 28, 2014) ("Claims of unjust enrichment may lie against municipal entities, just as they can against private parties.") (citing *Baird*, 756 S.W.2d at 245)); *Halpern 2012, LLC v. City of Ctr. Line*, 806 Fed. Appx. 390, 391 (6th Cir. 2020).

Metro argues that Plaintiffs did not suffer a "diminution in value" because their property may have increased due to the alleged "benefits of the sidewalk network." (Doc. 22, Def.'s Mem. at 30.) This is a breathtaking claim on its face; Metro certainly lightened Jason's pocketbook by $8,883.21. Regardless, diminution in value is a relevant factor for a regulatory taking under *Penn Central*, which is not what Plaintiffs allege. For an unjust enrichment claim—the claim Plaintiffs actually raised—Plaintiffs need only show that they conferred (or, in Jim's case, will confer) a benefit on Metro, that it appreciated, and that it would be unjust for Metro to keep the benefit. *Lawyers Title Ins. Corp.*, 21 F. Supp. 2d at 805. The law of unjust enrichment does not consider whether the benefit may have resulted in ancillary public benefits that "likely increased" (Doc. 22, Def.'s Mem. at 30) the value of the property Metro has unlawfully taken.

Diminution in value is certainly not an element of an exactions claim. After all, in *Koontz*, the prevailing property owner lost no value whatsoever because he never agreed to the condition in the first place and his permit was denied. 570 U.S. at 607. Indeed, that was the major issue in the case.[7] *Id*. ("The Florida Supreme Court puzzled over how the government's demand for

---

[7] Metro cites *Koontz* for the proposition that a diminution in value is the "central concern" in an exactions claim. (Doc. 22, Def.'s Mem. at 29 (citing *Koontz*, 529 U.S. at 614).) But Metro ignores that, like Jim, the plaintiff in *Koontz* never paid a thing or made a showing that the exaction created

17

property can violate the Takings Clause even though 'no property of any kind was ever taken.'"). And Jason actually did agree to the condition and lost $8,883.21. (Doc. 23, Def.'s SUMF ¶ 15.) In asserting that Jason's property "likely" increased in value—as if that matters—Metro cites no facts (Doc. 22, Def.'s Mem. at 30), in sharp contrast to the government entity in the case Metro cites (id. at 29): *Cline v. Red Bank Util. Dist.*, 250 S.W.2d 362, 364 (1952) ("There is proof to that effect, and it is not contradicted."). Finally, Metro's argument is especially perplexing because the sidewalk network Metro claims increased Plaintiffs' property values does not actually connect to their properties. (Doc. 20, Pls.' SUMF ¶¶ 16, 24, 30.)

The *Cline* decision from 1952 does not support Metro. (Doc. 22, Def.'s Mem. at 29.) There, the plaintiff claimed the utility district had made an implied contract with her to reimburse her for building a private sewer line, but the Court found "no competent evidence" of a contract. 250 S.W.2d at 363. In other words, the case turned on a failure to prove a contract, which is not at issue here. Plaintiffs are not claiming reimbursement for infrastructure they chose to build under an implied contract theory. Plaintiffs did not pay (or build) anything voluntarily. There is no dispute that Jason did everything he could to avoid paying the sidewalk in-lieu fee, only doing so once he had no other options. (Doc. 23, Def.'s SUMF ¶ 15.) The Supreme Court recognized that holding permits for ransom was unconstitutional in all three of its major exactions cases, all of which postdate *Cline* by many decades. Metro's authority is notable in that it cannot produce a case

---

a net loss for his property's value. 529 U.S. at 614 (describing the mere demand for an in-lieu fee as "thereby diminishing without justification the value of the property"). Still worse for Metro's argument, on the same page cited by Metro, the Supreme Court rejected the appropriateness of the regulatory takings test, accepting Koontz's argument that "when the government commands the relinquishment of funds linked to a specific, identifiable property interest such as a bank account or parcel of real property, a "*per se* [takings] approach" is the proper mode of analysis under the Court's precedent." *Id.*

18

standing for the proposition that it was not unjustly enriched when it demanded Jason pay, or that restitution would not be appropriate.

### B. Restitution is the only appropriate remedy.

Metro's primary argument goes to the appropriateness of restitution as a remedy. (Doc. 22, Def.'s Mem. at 28 (quoting *Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2176 (2019).) Metro insists that only compensation is a remedy. Metro is wrong as a matter of law, but as a practical matter, how would compensation actually differ from restitution since what Metro "took" from Jason was a check, not a piece of property whose value must be ascertained? Much as a challenge to a governmental demand for "a direct transfer of funds" does not require a suit for damages, *Apfel*, 524 U.S. at 521(quotation and citation omitted), seeking just compensation for the money Jason paid Metro makes no sense. It would "entail an utterly pointless set of activities" that would wind up in the same place as a restitution award. *Id.* (internal quotation and citation omitted).

Restitution is not just a legally available remedy but the obvious one. As recognized by the Supreme Court in *Koontz,* the question of remedies turns on "the cause of action—whether state or federal—on which the landowner relies." *Koontz*, 570 U.S. at 609. Plaintiffs rely on a *federal* cause of action: Section 1983. (Compl. ¶ 1.) As recognized by courts in this Circuit, restitution is an appropriate remedy under Section 1983. *Pund v. City of Bedford*, 339 F. Supp. 3d 701, 716 (N.D. Ohio 2018) (citing cases: "Federal courts are authorized to enter declaratory judgments and orders of restitution, as appropriate, as a direct remedy under Section 1983."); *Yannoti v. City of Ann Arbor*, 2019 U.S. Dist. LEXIS 185773, at *10 (E.D. Mich. Oct. 28, 2019) (citing cases: "The City fails to demonstrate that restitution damages or refund of fines because of a Fourth Amendment violation are clearly not available to any claimant as a matter of law under § 1983.").

19

Plaintiffs also rely on a *Tennessee* cause of action: unjust enrichment. (Compl. ¶¶ 150-59.) Restitution is an appropriate remedy for unjust enrichment. *Chase Manhattan Bank, N.A. v. CVE, Inc.*, 206 F. Supp. 2d 900, 909 (M.D. Tenn. 2002) ("The remedy for unjust enrichment requires that the person who has been unjustly enriched at the expense of another make restitution to that person.") (citing *Browder v. Hite*, 602 S.W.2d 489, 491 (Tenn. Ct. App. 1980)). A district court in this Circuit recently awarded restitution as a remedy for unjust enrichment claims premised on a wrongful exaction. *See Pund*, 339 F. Supp. 3d at 716–17 (awarding restitution for an exactions challenge to inspections fees under Ohio unjust enrichment cause of action).

Although Jim has not yet built his home, that does not mean that Metro is entitled to summary judgment on his claims. Jim faces an imminent injury. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) (finding plaintiffs must demonstrate a future harm that is "certainly impending"). When government takes a discrete fund of money, but the transfer of money has not yet occurred, a suit for compensation is "not available," and therefore, a request for an injunction is proper. *Apfel*, 524 U.S. at 520; *Student Loan Marketing Ass'n. v. Riley*, 104 F.3d 397, 401 (D.C. Cir. 1997) (same). Metro concedes that it will not give Jim a permit until he satisfies the condition. (Doc. 23, Def.'s SUMF ¶ 8; Compl. ¶ 73; Ans. ¶ 73.) His building permit expired because he refused to comply with Metro's demand. (Doc. 20, Pls.' SUMF ¶ 20.) Because he will build once the condition is removed (id. ¶ 21), the appropriate remedy for Jim is not restitution, but the injunction demanded in the Complaint. (Compl. ¶ 163.)

## CONCLUSION

This Court should deny Metro's Motion for Summary Judgment and grant Plaintiffs' Motion for Summary Judgment.

Dated: <u>September 29, 2021</u>.

Respectfully submitted,

  <u>s/ B. H. Boucek</u>
BRADEN H. BOUCEK
TN BPR No. 021399

  <u>s/ Kimberly Hermann</u>
KIMBERLY HERMANN*
GA Bar No. 646473

Southeastern Legal Foundation
560 West Crossville Road, Suite 104
Roswell, GA 30075
Telephone: 770/977.2131
bboucek@southeasternlegal.org
khermann@southeasternlegal.org

<u>s/ Meggan DeWitt</u>
MEGGAN DEWITT
DC Bar No. 1047631
Beacon Center of Tennessee
P.O. Box 198646
Nashville, TN 37219
Tel: 615/383.6431
meggan@beacontn.org

*Appearing Pro Hac Vice*

Counsel for plaintiffs

21

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served on the following persons by the following mean(s) on the following date:

| Counsel | Counsel for | Via |
|---|---|---|
| Allison Bussell<br>Will Ayers<br>Metropolitan Courthouse<br>Ste. 108<br>P.O. Box 196300<br>Nashville, TN 37219-6300<br>615/862.6341<br>Allison.Bussell@nashville.gov<br>Will.ayers@nashville.gov | Defendant | ☐United States mail, postage prepaid<br>☐Hand delivery<br>☐Fax<br>☐Email<br>☐FedEx<br>☒Efile |
| Meggan DeWitt<br>1200 E Clinton St. #205<br>Nashville, TN 37203<br>(o) (615) 383-6431<br>meggan@beacontn.org | Plaintiffs | ☐United States mail, postage prepaid<br>☐Hand delivery<br>☐Fax<br>☐Email<br>☐Fed Ex<br>☒Efile |

On this date: September 29, 2021.

         s/ B. H. Boucek
         BRADEN H. BOUCEK