IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JAMES KNIGHT AND JASON MAYES, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 3:20-cv-00922 |
| ) | Judge Trauger |
| THE METROPOLITAN GOVERNMENT ) | |
| OF NASHVILLE AND DAVIDSON ) | |
| COUNTY, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S REPLY IN SUPPORT OF SUMMARY JUDGMENT**

The Court should reject Plaintiffs' request to extend the unconstitutional conditions doctrine as applied to property exactions in *Nollan v. California Coastal Comm'n,* 483 U.S. 825 (1987), *Dolan v. City of Tigard,* 512 U.S. 374 (1994), and *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595 (2013), beyond the type of *ad hoc*, administrative exactions at stake in those cases. Plaintiffs identify no controlling authority that compels this Court to apply *Nollan/Dolan* scrutiny to a legislative land use condition such as the sidewalk ordinance they challenge. Nor do they effectively counter the arguments that support a restrained standard of review for legislative land use conditions. Accordingly, the Court should recognize the longstanding doctrinal difference between administrative and adjudicative land exactions, decline to find an exaction under *Nollan/Dolan,* and grant the Metropolitan Government's motion for summary judgment.

### A. A Deferential Standard Of Review For Legislative Exactions Is Constitutionally Sound.

Plaintiffs brush aside the administrative/legislative distinction that has guided courts in several states to hold that generally applicable, legislative land use conditions are not exactions subject to *Nollan/Dolan* scrutiny. (Pls.' Resp. to Def.'s Mot. Summ. J., Doc.

No. 29 at 2-3.) But to label this distinction "artificial" because administrative decisions can be traced back to enabling legislation misses its constitutional and logical significance. Plaintiffs focus on who carries out the alleged exaction, but the relevant issue is *how* the exaction happens. "To be sure, the manner of state action may matter: Condemnation by eminent domain, for example, is always a taking, while a legislative, executive, or judicial restriction of property use may or may not be, **depending on its nature and extent**." *Stop the Beach Renourishment, Inc. v. Fla. Dep't of Env't Prot.*, 560 U.S. 702, 715 (2010) (emphasis added).

This administrative/legislative distinction boils down to how much discretion is vested in an unelected body. *See San Remo Hotel, L.P. v. San Francisco City and Cty.*, 364 F.3d 1088, 1097 (9th Cir. 2004). The constitutional wrong that the high court scrutinized in *Nollan, Dolan,* and *Koontz* is one where an administrative body uses its discretion over the permit process to exact unlawful concessions from landowners. The exactions in *Nollan, Dolan,* and *Koontz* came at the hands of such bodies with vast discretion, unlike the automatic, legislative application of the sidewalk ordinance here. In *Dolan,* "the city made an adjudicative decision to condition petitioner's application for a building permit on an individual parcel." 512 U.S. at 385. In *Nollan,* an administrative body made extensive findings of fact as to a single property and a nearby beach, and then demanded an easement across the property. 483 U.S. at 828. *Koontz* involved horse-trading where an administrative body presented a permit applicant with three choices: 1) reduce the size of his development and grant an easement; 2) build the development as planned, grant an easement, and improve government-owned land miles away; or 3) present other ideas that the permitting body might "favorably consider." *Koontz*, 570 U.S. at 601-02.

{N0432493.1}                              2

Case 3:20-cv-00922   Document 35   Filed 10/11/21   Page 2 of 7 PageID #: 511

In each of these cases, an administrative body examined individual properties' characteristics *before* imposing a condition on development. Not so here, where Plaintiffs challenge an ordinance that applies automatically according to predetermined criteria. There is no discretion as to when, where, or how the ordinance applies. In this way, the sidewalk ordinance is similar to ordinances that have withstood takings challenges founded on the same arguments that Plaintiffs employ here. (*See* Mem. Law Supporting Def.'s Mot. Summ. J. at 14-17, 19-20.)

### B. No Binding Authority Extends *Nollan/Dolan* To Legislative Exactions.

The Supreme Court has stated that to the extent that the unconstitutional conditions doctrine applies in takings law, it is a "special application." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 547 (2005) (citing *Dolan*, 512 U.S. at 385.) It follows then that the starkly different constitutional contexts Plaintiffs cite — abortion, the death penalty, and criminal clemency — should not dictate how the doctrine applies to takings claims. Indeed, the Sixth Circuit has never applied the doctrine to a legislative exaction in the takings context, and the cases Plaintiffs cite refer to *Koontz* only for the general principle that the government may not coerce citizens to give up their constitutional rights in exchange for a benefit. *See, e.g.*, *Planned Parenthood of Greater Ohio v. Hodges*, 917 F.3d 908, 912-13 (6th Cir. 2019). In *Hodges*, the Sixth Circuit actually noted one reason for limiting the application of the doctrine, stating that "[a]ny risk of unequal application would arise in this case only if we *extend* the unconstitutional-conditions doctrine for the first time to an entity (here an abortion provider) that does not have a constitutional right." *Id.* at 915 (emphasis in original).

Furthermore, these cases concerned matters wherein legislatures have near absolute power to impose conditions that affect constitutional rights. Abortion and prisoner execution policy are the purview of legislatures, not administrative agencies. Thus, an

{N0432493.1}                                             3

Case 3:20-cv-00922   Document 35   Filed 10/11/21   Page 3 of 7 PageID #: 512

administrative/legislative distinction is not doctrinally appropriate in such cases. Contrast land use regulation, wherein elected bodies often delegate substantial decision-making authority to administrative bodies. *See, e.g.*, *Koontz*, 570 U.S. at 601-02.

In addition, *F.P. Dev., LLC v. Charter Twp. of Canton*, 456 F. Supp. 3d 879 (E.D. Mich. 2020), had nothing to say about whether *Nollan/Dolan* should apply to legislative land use conditions. *Id.* at 883. The district court did not address the issue and cited none of the cases that Plaintiffs use to argue for extending the unconstitutional conditions doctrine to legislative exactions. The parties did not even brief the issue at the district court or the Sixth Circuit. (Def.'s Mot. to Dismiss at 24-27, attached as Exhibit 1; Def.-Appellant's Br. at 27-36, attached as Exhibit 2.)

Plaintiffs' other non-binding authorities are distinguishable. *City of Portsmouth, N.H. v. Schlesinger*, 57 F.3d 12 (1st Cir. 1995), was not a takings case and concerned the statute of limitations controlling a contract dispute between a developer and a city. *Id.* at 15. *Com. Builders of N. Cal. v. City of Sacramento*, 941 F.2d 872 (9th Cir. 1991), predated *Dolan* and *Koontz* and did not address the question of law that is before this Court. *Id.* at 875. *Levin v. City of San Francisco*, 71 F. Supp. 3d 1072 (N.D. Cal. 2014), incorrectly interpreted Ninth Circuit precedent on the way to misapplying *Koontz* by failing to examine whether a rent-control ordinance operated on specific pieces of property, as opposed to the choices of property owners to remove their properties from a specific kind of market. *See* Glen Hansen, *Let's Be Reasonable: Why Neither* Nollan/Dolan *Nor* Penn Central *Should Govern Generally-Applied Legislative Exactions After* Koontz, 34 PACE ENVTL. L. REV. 237, 269-75 (2017). *Cheatham v. City of Hartselle*, No. CV-14-J-397-NE, 2015 WL 897583 (N.D. Ala. Mar. 3, 2015), examined a subdivision application that required fact-intensive, administrative review; unsurprisingly, the parties agreed that *Nollan/Dolan* applied. *Id.* at

*1-3. In *Nat'l Ass'n of Home Builders of U.S. v. Chesterfield Cty.*, 907 F. Supp. 166 (E.D. Va. 1995), the court did not need to decide whether *Nollan/Dolan* applied because of the facial nature of the challenge to a municipal policy. *Id.* at 168. Similarly, in *Town of Flower Mound v. Stafford Ests. Ltd. P'ship*, 135 S.W.3d 620 (Tex. 2004), the Texas Supreme Court did not decide whether *Nollan/Dolan* applied to legislative exactions generally; rather, the court found that "it is enough to say that we can find no meaningful distinction between the condition imposed on Stafford and the conditions imposed on Dolan and the Nollans." *Id.* at 641. *Curtis v. Town of S. Thomaston*, 708 A.2d 657 (Me. 1998), recognized a difference between legislative and administrative conditions, but in the context of a rough proportionality analysis, an unusual approach that no other court appears to have followed. *Id.* at 660. *N. Ill. Home Builders Ass'n, Inc. v. Cty. of Du Page*, 649 N.E.2d 384 (Ill. 1995), applied the obsolete "substantially advances" test for exactions that the Supreme Court cast aside in *Lingle,* 544 U.S. at 540. *N. Ill. Home Builders,* 649 N.E. at 389-90. Finally, *Delchester Devs., L.P. v. Zoning Hearing Bd. of Twp. of London Grove*, 161 A.3d 1081 (Pa. Commw. Ct. 2017), involved a complex development application that requested several variances and special exceptions, which triggered administrative review before the challenged development condition was imposed. *Id.* at 1086. Accordingly, *Nollan/Dolan* scrutiny was appropriate, and the opinion gives no hint that the parties disputed the standard of review on the takings issue.

Notably, Plaintiffs have not addressed any of the cases cited in the Metropolitan Government's motion for summary judgment that recognize and apply a doctrinal distinction between legislative and administrative takings.

### C. A Variance And Appeal Option Does Not Convert The Sidewalk Ordinance To An Unconstitutional Exaction.

While the sidewalk ordinance applies broadly and automatically, it does not have to apply rigidly. The ordinance allows Nashville's Zoning Administrator to alter or eliminate its requirements or reduce the amount of an in-lieu fee. (Metro. Code § 17.20.120(A)(3)(b), Doc. No. 1-2 at 3.) It also allows a permit applicant to ask the Board of Zoning Appeals ("BZA") for a variance. (Metro. Code § 17.20.125, Doc. No. 1-2 at 6.) These options offer flexibility to permit applicants. They do not convert the sidewalk ordinance into an unlawful exaction because the ordinance applies uniformly and without regard to individual property features. (Metro Code § 17.20.120(A), Doc. No. 1-2 at 2-4.) Thus, the sidewalk ordinance's requirements can be relaxed or eliminated, but only then does the Metropolitan Government individually assess a particular property. By that time, the ordinance has already been applied; the variance process offers the Zoning Administrator or the BZA limited discretion to alter or remove the ordinance's requirements.

A property owner can apply for a variance from nearly any part of the Metropolitan Zoning Code. (Metro. Code § 17.40.330, attached as Exhibit 3.) Such variance procedures are commonplace, and do not transform zoning regulations into exactions. If that were so, the zoning codes of cities and towns across the country would suddenly be subject to Fifth Amendment challenges. In one court's understated view, such a world "in which every city ordinance was subject to an unconstitutional exaction challenge would be unworkable." *Ballinger v. City of Oakland*, 398 F. Supp. 3d 560, 572 (N.D. Cal. 2019). Accordingly, a variance option can immunize an ordinance from a facial takings challenge. *See Lake Nacimiento Ranch Co. v. Cty. of San Luis Obispo*, 841 F.2d 872, 877 (9th Cir. 1987); *Home Builders Assn. v. City of Napa*, 108 Cal.Rptr.2d 60, 64 (2001).

Respectfully submitted,

THE DEPARTMENT OF LAW OF THE
METROPOLITAN GOVERNMENT OF
NASHVILLE AND DAVIDSON COUNTY
WALLACE W. DIETZ (#9949)
DIRECTOR OF LAW

*/s/John W. Ayers*
ALLISON L. BUSSELL (#23538)
JOHN W. AYERS (#37494)
108 Metropolitan Courthouse
P.O. Box 196300
Nashville, Tennessee 37219
(615) 862-6341
allison.bussell@nashville.gov
will.ayers@nashville.gov

*Counsel for the Metropolitan Government*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been forwarded by electronic mail and the electronic filing system to:

Meggan S. Dewitt
Beacon Center
201 4th Ave. N., Suite 1820
Nashville, TN 37219

Braden H. Boucek
Kimberly S. Hermann
Cece O'Leary
Southeastern Legal Foundation
560 West Crossville Road, Suite 104
Roswell, GA 30075

on this the 11th day of October, 2021.

*/s/John W. Ayers*
John W. Ayers